UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TED GERARD,<br><br>              Plaintiff,<br><br>              v.<br><br>1199 NATIONAL BENEFIT FUNDS, et al.,<br><br>              Defendants. | 23 Civ. 7950 (DEH)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

DALE E. HO, United States District Judge:

On September 13, 2024, this Court issued an Opinion and Order dismissing the Complaint in this case (the "Dismissal Order").[1] On November 1, 2024, Plaintiff Ted Gerard, proceeding *pro se*, filed a proposed First Amended Complaint (the "proposed FAC"),[2] which he re-pleads his claims against former employer, the 1199 SEIU National Benefit Funds (the "Fund"), and Richard Whitter and Kevin Hurley, employees in the Human Resources ("HR") department at the Fund, regarding his termination. Mr. Gerard has also filed a letter accompanying the Proposed FAC,[3] which the Court construes as a motion to amend his Complaint, or in the alternative, because the letter argues that the Dismissal Order was incorrect, as a motion to reconsider the Dismissal Order. Defendants oppose.[4]

For the reasons given below, Mr. Gerard's motion to amend is **GRANTED**, and his motion for reconsideration is **GRANTED IN PART and DENIED IN PART**. Specifically, the Court will permit Mr. Gerard to pursue the following claims against the Fund: (1) reasonable

---

[1] *See* ECF No. 31.

[2] *See* ECF No. 34.

[3] *See* ECF No. 35.

[4] *See* ECF No. 40.

accommodation claims under the Americans with Disabilities Act, (the "ADA"), the New York State Human Rights Law, (the "NYSHRL"), and the New York City Human Rights Law, (the "NYCHRL"); and (2) a "cooperative dialogue" claim under the NYCHRL. Such claims are limited to the period from October 5, 2021 to December 1, 2021. All other claims, including claims against the Individual Defendants, and any claims for alleged injuries after December 1, 2021, remain dismissed.

## BACKGROUND

The Court assumes that readers of this Opinion are familiar with its prior Dismissal Order, and the general facts of this case as set forth in it. For the purposes of this Opinion, the Court reiterates only a few basic facts, largely set forth in the original Complaint, Mr. Gerard's Opposition to the Motion to Dismiss, and Mr. Gerard's Proposed FAC, which are presumed to be true solely for purposes of adjudicating the present motions.[5] Because Plaintiff proceeds *pro se*, his submissions are construed liberally to raise the strongest arguments that they suggest.[6] To the extent that any of these documents or allegations are inconsistent with each other, the Court credits

---

[5] *See Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022). The Court also considers all documents attached to or referenced in the Complaint and Proposed FAC in adjudicating this motion. *Cf. DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court also incorporates factual allegations made in Plaintiff's submission in opposition to the motion. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

In all quotations from cases, citations, footnotes, brackets, ellipses, and emphases are omitted unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

[6] *See Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 457 (2d Cir. 2022).

the most specific evidence available, while still construing the Complaint as a whole in the light most favorable to Plaintiff, with the special solicitude afforded to *pro se* litigants.[7]

Over the summer of 2021, the Fund announced that all employees would need to be vaccinated for COVID-19 by September 17, 2021.[8] This deadline was later delayed to October 4, 2021, with any requests for an accommodation due by September 17, 2021.[9]

On August 19, 2021, Mr. Gerard contracted COVID-19.[10] At the time, he had been working remotely for more than a year.[11] Due to complications he experienced from his infection, Mr. Gerard's cardiologist informed him that he should not receive the COVID-19 vaccine for 90 days.[12] His primary care doctor also recommended that he wait 90 days to receive the vaccine.[13]

On August 30, 2021, Mr. Gerard informed the Fund's HR department that he would be unable to comply with the Fund's vaccine mandate, because "as per my doctor I will not be able to get vaccinated until 90 days after my COVID diagnosis which would be November 18, 2021."[14] In that email, he requested that someone in HR contact him about "available options for [his]

---

[7] *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests."); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("[W]e draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto."); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint.").

[8] Compl. at 13, EEOC Charge ¶ 4, ECF No. 1.

[9] Weinberger Aff. Ex. B, 16-17, ECF No. 19-1.

[10] Compl. at 13, EEOC Charge ¶ 5.

[11] *See* Proposed FAC at 3.

[12] Compl. at 14, EEOC Charge ¶¶ 6-7.

[13] *Id.* at 14, EEOC Charge ¶ 8.

[14] Proposed FAC at 4.

3

current situation . . . ."[15] That email triggered a series of back-and-forth exchanges between Mr. Gerard and the Fund's HR department. On September 2, 2021, Mr. Gerard reiterated his doctor's advice to wait 90 days before receiving his vaccination.[16] On September 8, 2021, he described his ongoing symptoms, including "dizziness, extreme nausea, shortness of breath, and extreme fatigue . . . as well as high blood pressure," which his doctor stated "seems to [be] Covid related," and further noted that his doctor "ordered chest x-rays" to rule out "pneumonia or blood clots."[17] After several more emails, a Fund employee emailed on September 29, 2021, informing Mr. Gerard that unless he provided proof of vaccination by October 4, he would not be able to work in the office or remotely, effective October 5; and that if he did not provide proof of vaccination following a 30 day leave period, he would be deemed to have voluntarily resigned.[18]

The next day, on September 30, 2021, the Fund inquired if he had treated with monoclonal antibodies or convalescent plasma,[19] treatments that would make it medically necessary to delay receiving vaccination. The Fund followed up the following day, on October 1, 2021, and Mr. Gerard responded with an email stating, "I think we should have a conversation or that someone in HR should reach out to my primary care provider and ask her what she told me about having to wait 90 days after having Covid to get vaccinated because it seems that I am not being believed."[20] Later the same day, Mr. Gerard again emailed the Fund's HR department, restating that he had "no problem getting vaccinated," provided that he be given 90 days, in accordance with his doctors'

---

[15] *Id.*

[16] Pl.'s Resp. to Defs.' Mot. to Dismiss at 31 ("Pl.'s Opp'n"), ECF No. 28; Proposed FAC at 4.

[17] Pl.'s Opp'n at 32; Proposed FAC at 5.

[18] Compl. at 14, EEOC Charge ¶¶ 15-16.

[19] Pl.'s Opp'n at 37.

[20] *Id.*

instructions.[21] A series of additional emails followed, including one in which a Fund Assistant Director in HR, Kevin Hurley, stated that, after consulting with the Fund's medical consultants, Mr. Gerard's "request would not be approved based on the information [he] provided."[22]

On October 5, 2021, the Fund placed Plaintiff on leave, effective immediately.[23] On October 6, 2021, Plaintiff submitted a note dated October 5, 2021 from Sonia Deora, D.O., stating that "Patient should get COVID vaccine 90 days after his infection which was on 8/19/2021."[24] After additional email exchanges, Mr. Gerard's leave was extended on October 20, 2021, in an email noting that the leave was unpaid and would last up to 30 days.[25]

Mr. Gerard was vaccinated on November 19, 2021,[26] and informed his supervisor that day.[27] On November 27, 2021, he emailed the Fund stating he had not "heard back from anyone regarding my FMLA or return to work" and asking for information "about the status of my job."[28] On December 1, 2021, the Fund emailed Mr. Gerard stating that because the Fund had not received any proof of vaccination, his employment ended effective November 19, 2021, but added that if Plaintiff provided proof of vaccination by December 3, he would be reinstated.[29] Hurley further stated that Plaintiff's FMLA leave request could not be considered because he was on employment

---

[21] *Id.* at 47.

[22] *Id.* at 48.

[23] *See id.* at 8.

[24] *Id.* at 51.

[25] *Id.* at 53.

[26] *See* Dismissal Order at 6.

[27] Pl.'s Opp'n at 10.

[28] *Id.* at 54; Proposed FAC at 11.

[29] Pl.'s Opp'n at 55; Proposed FAC at 11.

leave, but "[o]nce [he was] reinstated, [his] FMLA leave will be granted, assuming [he] still need[s] it."[30]  Plaintiff responded to this email by directing Hurley to his counsel.[31]

## LEGAL STANDARDS

Under Rule 15, "leave to amend should be freely granted when 'justice so requires.'"[32] "However, leave need not be granted in cases of 'futility of amendment.'"[33]  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) . . . ."[34]  When reviewing *pro se* pleadings, a Court must interpret them to raise the "strongest arguments that they suggest."[35]

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority."[36]  "[T]he . . . standard for a district court to grant such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked and might reasonably be expected to alter the conclusion reached by the court."[37] Courts also grant reconsideration to "correct a clear error or prevent manifest injustice."[38]  That said, a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case

---

[30] Pl.'s Opp'n at 55

[31] Dismissal Order at 6.

[32] *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)).

[33] *Meyer v. Seidel*, 89 F.4th 117, 140 (2d Cir. 2023) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[34] *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).

[35] *Triestman v. Fed. Bureau of Prisons*, 470. F.3d 471, 474 (2d Cir. 2006).

[36] *Van Buskirk v. United Grp. Of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).

[37] *Smith v. CVS Albany, LLC*, No. 20 Civ. 4000, 2022 WL 3022526, at *1 (2d Cir. Aug. 1, 2022).

[38] *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014).

under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."[39]

## DISCUSSION

### I.  Reasonable Accommodation Claims

The essence of Mr. Gerard's complaint is that, due to his significant illness and ongoing symptoms of Long COVID, he was unable to obtain his COVID vaccination by the October 5, 2021 deadline set by the Fund. Based on the recommendations of his primary care physician and cardiologist, he sought an accommodation in the form of a delay in obtaining his vaccination until 90 days after his initial COVID diagnosis on August 19, 2021—meaning a delay in vaccination until November 19, 2021.

His allegations are principally a reasonable accommodation claim. The Second Circuit has articulated the standard for such a claim as follows:

> In so-called reasonable-accommodation cases, such as this one, the plaintiff's burden requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.[40]

### A.  Disability

As to the first element—a disability—courts have held that an ordinary COVID infection does not typically rise to the level of a disability.[41] But other courts have referenced EEOC guidance stating that "'an individual with COVID-19 might have an actual disability' depending

---

[39] *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *accord Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947, 2021 WL 3406192, at *11 (S.D.N.Y. Aug. 4, 2021).

[40] *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 183-184 (2d Cir. 2006) (citation and internal quotations omitted).

[41] *See, e.g.*, *Apuzza v. NYU Langone Long Island*, No. 22 Civ. 7519, 2023 WL 9022790, at *8 (E.D.N.Y. Dec. 29, 2023), *aff'd*, No. 24 Civ. 493, 2025 WL 763425 (2d Cir. Mar. 11, 2025).

on 'the specific facts involved in a particular employee's medical condition.'"[42] Here, Mr. Gerard states that, at relevant times in fall 2021, he was suffering from symptoms that are associated with what is now sometimes described as Long COVID.[43] His experience included "serious health complications . . . , including extreme fatigue, irregular heartbeat, shortness of breath and unusually high blood pressure," with his cardiologist suggesting a "possible need for heart surgery, specifically having stints placed in his heart."[44] Defendants, in their Motion to Dismiss and in their Opposition to the motions here, have not contested that Mr. Gerard's experience with Long COVID constituted a disability.[45] The Court therefore concludes, based on the allegations before it, in light of the solicitude offered to *pro se* litigants, and without prejudice to further arguments that Defendants could raise based on a developed factual record, that Mr. Gerard's allegations here are sufficient to establish a disability within the meaning of the ADA.[46]

### B. Notice

As to the second element—whether the Fund had notice of his alleged disability, Mr. Gerard first mentioned his ongoing issues with respect to COVID, and his desire for an accommodation of some sort with respect to the vaccine mandate, in an August 30, 2021 email to

---

[42] *Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264, 279 n.4 (N.D.N.Y. 2023) (quoting EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws), *aff'd*, 103 F.4th 159 (2d Cir. 2024).

[43] Proposed FAC ¶ 5.

[44] *Id.* at 3, 10.

[45] *See* Mem. Supp. Mot. to Dismiss at 9, ECF No. 18 (arguing that "There are no allegations in the Complaint that connect the termination of his employment with his disability, which he describes as 'Long Covid.'").

[46] *See* 42 U.S.C. § 12102(1)(A) (defining "disability" to include, among other things, "a physical or mental impairment that substantially limits one or more major life activities.").

8

the Fund, asking that "someone from HR contact me about available options."[47] He then specified in a September 2, 2021 email that he was seeking not to "tak[e] the vaccine before 11/18/21, which is when my doctor said I would be able to since I have to wait 90 days after being diagnosed to take the vaccine. Please advise."[48] Then, in a September 8, 2021 email, he a described his ongoing symptoms, including "an irregular heartbeat," "dizziness, extreme nausea, shortness of breath and extreme fatigue."[49] And, after Mr. Gerard was placed on leave on October 5, 2021, he forwarded a short note from his doctor, from Sonia Deora, D.O., stating that "Patient should get COVID vaccine 90 days after his infection which was on 8/19/2021."[50] These facts are sufficient to allege that the Fund had notice of Mr. Gerard's alleged disability.

In granting Defendants' motion to dismiss, this Court previously held that Mr. Gerard's emails (which were not always crystal clear) and the note from his doctor (which is rather short) were insufficient to satisfy his obligation to provide information that would enable his employer to assess the parameters of his alleged disability.[51] But, upon further review of applicable Second Circuit case law, the Court now concludes that its prior ruling was erroneous. The ADA "contemplates that employers will engage in 'an "interactive process" with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated.'"[52] And where, as here, an employee's disability is known to the employer, the

---

[47] Compl. at 45; Proposed FAC at 4.

[48] Proposed FAC at 4.

[49] Proposed FAC at 5.

[50] Compl. at 51; Proposed FAC at 9.

[51] *See* Dismissal Order at 10 (citing *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 579 (S.D.N.Y. 2008)).

[52] *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (quoting *Jackan v. N.Y. State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000)).

"*employer is required to act proactively* and engage in an interactive process to accommodate the disability of an employee even if the employee does not request accommodation."[53]

Applying that guidance from the Second Circuit, the Court now concludes that Mr. Gerard plausibly alleges that the Fund did not adequately discharge its obligation to proactively engage in the interactive process to assess the contours of his disability and arrive at a possible accommodation, as contemplated by the ADA (and by the parallel New York State and City laws). In dismissing Mr. Gerard's reasonable accommodation claims due to the brevity of his doctor's note, this Court erred by placing the bulk of the burden in the interactive process on Mr. Gerard, rather than on his employer. Reconsideration is therefore appropriate both to correct a clear error and to prevent manifest injustice.[54]

None of this should be read as suggesting that an employee need not provide documentation requested by an employer that is sufficient to enable the employer to assess the contours of the employee's alleged disability. An employee does bear such a burden, and an employer is well within its rights to request such documentation, and to follow up if it appears inadequate.[55] But here, even before the Fund received Mr. Gerard's doctor's note, it informed him that his "request would not be approved based on the information that [he] provided,"[56] which—

---

[53] *McElwee v. Cnty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012) (emphasis added); *see also Conway v. Healthfirst Inc.*, No. 21 Civ. 6512, 2022 WL 4813498, at *5 (S.D.N.Y. Sept. 30, 2022) ("the employer must make a reasonable effort to determine an appropriate accommodation based on the particular job involved and consultation with the employee"); 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation.").

[54] *See Schoolcraft*, 298 F.R.D. at 136.

[55] *Cf. Julius v. Dep't of Hum. Res. Admin.*, No. 08 Civ. 3091, 2010 WL 1253163, at *10-11 (S.D.N.Y. Mar. 24, 2010) (granting summary judgment where the plaintiff failed to submit supporting documentation in support of accommodation request).

[56] Proposed FAC at 7.

viewed in the light most favorable to the Plaintiff, as is appropriate on a motion to dismiss—suggests a lack of openness to the sort of interactive process that the ADA requires. And while the Fund, after receiving the doctor's note, fairly observed that it was sparse in terms of information explaining its recommendation that Mr. Gerard wait 90 days for his vaccination,[57] an employer still bears the burden with respect to the interactive process under the ADA. Thus, the Fund should have done more than simply declare the note insufficient and deny him an accommodation on that basis without at least inquiring more about the nature of his condition, and then working proactively to see if a reasonable accommodation might be possible—particularly given that Mr, Gerard had already been working remotely since the start of the pandemic.

It is possible that all of this boils down to a misunderstanding. The Fund asked Mr. Gerard for information about particular treatments (monoclonal antibodies and convalescent plasma) that necessitate a waiting period for vaccination; he initially responded by directing them to his doctors; then, only after he was suspended did he ultimately provide a doctor's note; and even then, the note did not directly address the subject of the Fund's inquiry (i.e., the two treatments in question). While Mr. Gerard alleges that he was simply providing the information that he had, even if it was not directly apposite to the Fund's requests, the Fund may have interpreted this sequence of events as indicating some sort of resistance to its request for information. But even then, the burden remains on the employer to proactively engage in the interactive process. Thus, in light of the applicable legal standard, the allegations plausibly suggest that the Fund bore the responsibility for any misunderstanding between the parties.[58]

---

[57] *See* Pl.'s Opp'n at 55.

[58] *Cf. Burke v. Consol. Edison Co. of N.Y., Inc.*, No. 23 Civ. 2111, 2025 WL 2687787, at *11 (S.D.N.Y. Sept. 19, 2025).

### C. Performance of Essential Functions

As to the third element—whether the plaintiff could perform the essential functions of his job with a reasonable accommodation—Defendants did not raise this issue in their Motion to Dismiss or in their opposition to Mr. Gerard's motion here. Based on the allegations before the Court, in light of the solicitude offered to *pro se* litigants, and without prejudice to further arguments that Defendants could raise based on a more developed record, the Court concludes that, for purposes of this stage of the litigation, Mr. Gerard has adequately alleged that he could continue to perform the essential functions of his job with his requested accommodation of a delay in obtaining his vaccination before being required to return to the office. Mr. Gerard had been working remotely for more than a year,[59] and there is nothing currently before the Court suggesting that he could not have continued to do so while he waited the recommended 90 days before receiving his vaccination.

### D. Denial of Accommodation

The fourth and final element is whether Defendants refused to offer Mr. Gerard his requested accommodation. The Court previously determined that Mr. Gerard had not been denied an accommodation in the form of a delay in receiving his vaccination, because Mr. Gerard was vaccinated on November 19, 2021, and, on December 1, 2021, the Fund offered to restore him to work if he submitted proof of vaccination by December 3, 2021.[60] Defendants therefore did not deny any request for an accommodation as of December 1, 2021; any claims from that date onwards fail and must remain dismissed.

---

[59] *See* Proposed FAC at 3.

[60] *See* Dismissal Order at 6, 13-14.

As noted above, however, the Court has concluded in this Opinion that Mr. Gerard has adequately alleged that the Fund failed to discharge its obligation to engage in the interactive process with him regarding an accommodation for his condition. And also, for reasons stated above, the Court concludes that it erred in previously determining that any pre-December 1, 2021 claims for reasonable accommodation failed due to the (in)adequacy of Mr. Gerard's documentation. Thus, from the time Mr. Gerard was placed on leave on October 5, 2021, until the Fund offered to reinstate him to work on December 1, 2021, he has alleged that the Fund failed to provide him with an accommodation.

Accordingly, any claims for a reasonable accommodation under the ADA, NYSHRL, and NYCHRL based on the period from October 5, 2021 to December 1, 2021 survive.

## II. Other Claims

Mr. Gerard raises a number of other claims, which the Court now addresses in turn.

First, Mr. Gerard's cooperative dialogue claim under the NYCHRL survives. "[A] failure to engage in the interactive process is independently actionable as a separate claim under the NYCHRL."[61] To the extent that this claim is based on the period from October 5, 2021 to December 1, 2021, this claim survives for the same reasons that his reasonable accommodation claims do. Any claim based on the period after December 1, 2021 fails for the reasons stated above.

Second, Mr. Gerard's remaining claims against the Fund fail for the same reasons stated in the Dismissal Order. His motions here fail to state any new facts or point to any legal authority overlooked previously by the Court that would sustain his claims for employment discrimination

---

[61] *Greenbaum v. N.Y.C. Transit Auth.*, No. 21-1777, 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022) (quoting the NYCHRL that "[i]t shall be an unlawful discriminatory practice for an employer . . . to . . . fail to engage in a cooperative dialogue . . . with a person who has requested an accommodation . . . [r]elated to a disability").

in the form of an adverse action, his claims under the Family Medical Leave Act, or those under the New York Permanent Sick Leave Law. Accordingly, those claims remain dismissed.

Third, Mr. Gerard raises claims against the individual defendants in this case, Kevin Hurley and Richard Whitter. Defendants previously argued that these claims fail because, among other things, individual liability is not permitted under the ADA.[62] The Court had no reason to consider this argument in its Dismissal Order because it dismissed all of Mr. Gerard's claims on other merits grounds. As his only remaining claims now are his reasonable accommodation and cooperative dialogue claims, the Court considers this argument here and agrees with Defendants that Mr. Gerard's remaining claims against the Individual Defendants fail because there is no individual liability under the ADA.[63]

## CONCLUSION

"[T]he Court's interest is in reaching the correct result and, to that end, takes no issue with revisiting [its prior] ruling."[64] Here, for the reasons stated above, Mr. Gerard's Motion to Amend is **GRANTED**, and his Motion for Reconsideration is **GRANTED IN PART** and **DENIED IN PART**. Upon reviewing the latest submissions from the parties and applicable guidance from the Second Circuit regarding the issue of reasonable accommodation under the ADA, the Court concludes that reconsideration of its prior rulings on Mr. Gerard's reasonable accommodation and cooperative dialogue claims is appropriate, and those portions of the Dismissal Order at ECF No.

---

[62] *See* Mem. Supp. Mot. to Dismiss at 13.

[63] *See Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302-03 (S.D.N.Y. 2016). The Court is aware of no authority indicating that individual liability is permitted for parallel reasonable accommodation claims under the NYSHRL or NYCHRL, or for cooperative dialogue claims under the latter.

[64] *Martinez v. Hyde*, No. 25 Civ. 11613, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025); *see also Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 390 (D. Del. 2025) ("A smart man knows when he is right; a wise man knows when he is wrong.").

31, are hereby **VACATED**. Mr. Gerard's reasonable accommodation and cooperative dialogue claims against the Fund for the period from the period of October 5, 2021 to December 1, 2021 survive; all other claims remain dismissed. The operative complaint in this case is now the First Amended Complaint at ECF No. 34.

The parties are directed to meet-and-confer within the next fourteen days, and Defendants are directed to submit a status letter to the Court by December 1, 2025. The letter shall propose next steps for this litigation, and shall state whether the parties seek a referral for mediation either to the District's mediation program, or to the assigned Magistrate Judge for a settlement conference. The parties shall also submit, as an attachment to the letter, a proposed case management plan.[65]

SO ORDERED.

Dated: November 6, 2025
New York, New York

DALE E. HO
United States District Judge

---

[65] Available at:
https://www.nysd.uscourts.gov/sites/default/files/practice_documents/DEH%20Ho%20Civil%20Case%20Management%20Plan%20and%20Scheduling%20Order%20-%20December%2012%2C%202023_0.pdf.